# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

––––––––––––––––––

Nº 03-CV-3777 (JFB) (WDW)

––––––––––––––––––

HUMAN RESOURCE RESEARCH AND MANAGEMENT GROUP, INC., D/B/A
HOMEWORKS, AND OXFORD HOUSE, INC.,

Plaintiffs,

VERSUS

COUNTY OF SUFFOLK,

Defendant.

––––––––––––––––––

Nº 05-CV-0483 (JFB) (WDW)

––––––––––––––––––

VINCENT REYNOLDS, EDSEL CALDERONE, MARY MONROE, BARBARA JOHNSON,
FRANK FARINO, JAN PFLANZER, ALICIA TURNER, MIKE JOSELL, ESTELLE LYONS,
HAROLD WALKER, DINA TRAVIS, AND OYA BANGURA,

Plaintiffs,

VERSUS

SUFFOLK COUNTY, SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES, AND
SUFFOLK COUNTY DEPARTMENT OF HEALTH SERVICES,

Defendants.

––––––––––––––––––

**MEMORANDUM AND ORDER**
February 17, 2010
––––––––––––––––––

JOSEPH F. BIANCO, District Judge:

Plaintiffs in this case bring a facial challenge to S.C.C. § 450, a Suffolk County law regulating substance abuse recovery houses in Suffolk County, alleging that the local law violates the United States and New York State Constitutions, as well as the federal Fair Housing Act, the federal Americans With Disabilities Act and various provisions of New York State law. This Memorandum and Order disposes of motions for summary judgment in two separate actions, *Human Resource Research and Management Group, Inc., d/b/a Homeworks, and Oxford House, Inc. v. County of Suffolk* (No. 03-cv-3777) (hereinafter the "Oxford House action") and *Reynolds et al. v. Suffolk County et al.* (No. 05-cv-0483) (hereinafter the "Reynolds action"), which are consolidated for purposes of these motions. Plaintiff Oxford House, Inc. (hereinafter "Oxford House") moves for summary judgment against defendant Suffolk County (03-cv-3777). Plaintiffs in the Reynolds action (hereinafter the "Reynolds plaintiffs") also move for summary judgment against Suffolk County, the Suffolk County Department of Social Services, and the Suffolk County Department of Health Services (05-cv-0483).[1] Plaintiffs in both actions ask the Court to declare S.C.C. § 450 unconstitutional and violative of the above-mentioned federal anti-discrimination laws and to enjoin the local law's enforcement. The Reynolds plaintiffs also seek additional declaratory and injunctive relief against Suffolk County for an alleged pattern of discrimination against disabled persons recovering from alcoholism or substance abuse.

The Court declines to address plaintiffs' constitutional challenges to the law because, as discussed below, the Court concludes that the challenged law violates the Fair Housing Act based upon the uncontroverted record in this case. In particular, there are four provisions of S.C.C. § 450 at issue, all of which the Court concludes violate the Fair Housing Act: (1) a site-selection provision that establishes a notice requirement and approval procedure to assess the desirability of the proposed substance abuse house in the area under consideration; (2) a requirement that each substance abuse house must have a "certified site manager" living on-site 24-hours per day, seven days per week; (3) a limitation of six individuals receiving substance abuse services in the house; and (4) a licensing requirement, which includes a fee and an inspection provision. The Court recognizes that this statute was enacted in response to certain complaints from the public about the operation of substance abuse recovery houses in Suffolk County and a purported negative impact on the community. However, because this law facially discriminates against a group of disabled individuals (namely, individuals recovering from substance abuse) and subjects them to

---

[1] Only Suffolk County is a proper defendant in this action. *See, e.g., Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) ("In New York, agencies of a municipality are not suable entities. The only proper defendant in a lawsuit against an agency of a municipality is the municipality itself, not the agency through which the municipality acted. This is so because, 'Under New York law, departments that are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot be sued.'" (citations omitted)). For purposes of convenience, the Court will refer to all named defendants in this action as "Suffolk County," "the County," or "defendant."

burdens on housing that do not apply to others, this law is subject to heightened scrutiny under the Fair Housing Act – a standard that the County does not come close to meeting based upon the undisputed facts in this case. Although the County invokes some legitimate public safety interests – such as preventing crime, overcrowding, and excessive littering – in an attempt to justify the legislation, the County has put forth woefully insufficient evidence, even when such evidence is construed most favorably to the County, to show that any of these legitimate government interests are furthered by actual provisions of S.C.C. § 450. In addition, there is no evidence that these restrictions will benefit the protected class of disabled persons. In fact, not only is there no evidence to demonstrate that these restrictions will benefit the disabled or further the legitimate interests of the community, but there is evidence (including from Suffolk County's own Department of Health official) that these restrictions may even undermine those interests in some cases by hindering the continuing recovery of former substance abusers. For example, the highest ranking official regarding alcohol and substance abuse issues in the Suffolk County Department of Health testified, among other things, that (1) he was not consulted by the legislature in connection with the local law; (2) not all of the challenged provisions are necessary for all persons recovering from substance abuse; and (3) the presence of a 24/7 site manager could potentially be counterproductive to the recovery of substance abusers by discouraging independent and normal living. In short, the County has failed to put forth any studies or other evidence to demonstrate how these restrictions further any legitimate governmental interest in theory and in practice, rather than being based on sweeping generalizations, anecdotal stories from a few

members of the public, and stereotypes – none of which provide a legally sufficient basis to support a facially discriminatory law. Moreover, even assuming Suffolk County proffered evidence that demonstrated that a legitimate government interest was furthered by each of these provisions, it is abundantly clear based upon the uncontroverted evidence in the record that these sweeping restrictions are not the least discriminatory means of furthering these purported interests – which the Fair Housing Act also requires in this situation. Instead, to a substantial extent, these onerous restrictions make no attempt to allow a fact-specific determination of any issues with a particular substance abuse home depending on its size and needs, in conjunction with the legitimate interests of the surrounding community and the government. Accordingly, the uncontroverted evidence in the record (even construed most favorably to defendant under the summary judgment standard) demonstrates that the challenged provisions of S.C.C. § 450 unlawfully discriminate under the Fair Housing Act and are facially invalid under, and are therefore preempted by, the Act.

The Court, therefore, grants both motions for summary judgment insofar as they request a permanent injunction against the enforcement of the relevant provisions of S.C.C. § 450. Insofar as the Reynolds plaintiffs seek additional declaratory or injunctive relief, the Court denies that part of their motion for summary judgment.

## I. FACTS

The Court has taken the facts set forth below from the parties' depositions, affidavits, exhibits, and Rule 56.1 statements of facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving

party—here, the defendants. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2001). Unless otherwise noted, where a party's Rule 56.1 statement or deposition is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.

## A. The Parties

### 1. Oxford House

Oxford House is the umbrella organization of a network of self-run, self-help, self-supportive recovery houses for people recovering from alcoholism and/or substance abuse. (Oxford House Pl.'s 56.1 ¶ 41.) The first Oxford House residence was established in 1975 in Maryland and, since then, more than 1,300 Oxford House residences have been established in the United States, Australia, and Canada. (*Id.* ¶¶ 42-43.) Since its inception, Oxford House has relied upon three basic principles: (1) all Oxford House residences must be democratically run; (2) all Oxford House residences must be financially self-supported; and (3) the group at an Oxford House residence must expel any resident who uses alcohol or drugs in or out of the residence. (*Id.* ¶ 45.)[2] Oxford House monitors its residences to ensure that they adhere to general Oxford House principles. (*Id.* ¶ 59.) Oxford House is not "affiliated" with any treatment centers.[3] (*Id.* ¶ 32.)

In 1991, Oxford House established a residence in East Farmingdale, New York using $4,000 from a fund provided by New York State. (*Id.* ¶ 56.) The funds were used to pay the landlord one month rent and a security deposit. (*Id.* ¶ 57.) Because Oxford House was satisfied that the East Farmingdale residence could adhere to the organization's basic principles, the residence was awarded a charter by Oxford House. (*Id.* ¶ 58.)

### 2. Reynolds Plaintiffs

The Reynolds plaintiffs are individuals who have participated in "affiliated" substance abuse recovery programs in Suffolk County, including Homeworks and out-patient substance abuse treatment services from the Lake Grove Treatment Center. (Reynolds Pls.' 56.1 ¶¶ 2-3.)

## B. The Local Law

On April 29, 2003, the Suffolk County Legislature approved Local Law No. 19-2003.[4] (Reynolds Pls.' 56.1 ¶ 122; Schonfeld. Aff., May 21, 2009, Ex. A (hereinafter "S.C.C. § 450" or "the local law").) The stated purpose of the law was:

> to foster communication and cooperation

---

[2] There are two paragraphs numbered 45 in Oxford House's Rule 56.1 statement. In considering these and any other numbering inconsistencies in the parties' respective Rule 56.1 statements, the Court has construed the paragraphs of defendant's Rule 56.1 statement to relate to the corresponding paragraphs in Oxford House's Rule 56.1 statement, given the context of the information in the relevant paragraphs.

[3] Although defendant purports to dispute this fact, defendant admits that it has "no proof to the contrary." (Def.'s Reply to Oxford House Pl.'s 56.1 ¶ 32.)

[4] The law was enacted over the veto of the County Executive, who stated that his veto was based in part on his belief that the law violated the Fair Housing Act. (Oxford House Pl.'s 56.1 ¶¶ 1-2; Schonfeld Aff., May 21, 2009, Ex. B.)

between government agencies, local governments, and local communities by establishment of clearly defined procedures for selection of locations for substance abuse houses to protect the interests of the ill while still ensuring acceptance by local communities.

S.C.C. § 450-1.

The local law was enacted in part to respond to community complaints about conditions in substance abuse houses, or sober homes, as alleged by neighborhood civic groups alleging poor conditions and profiteering by landlords. (Reynolds Pls.' 56.1 ¶ 90.) The complaints received by Suffolk County about substance abuse houses have largely involved residences affiliated with substance abuse treatment centers. (Oxford House Pl.'s 56.1 ¶ 36.) There was also concern expressed about persons coming to Suffolk County from New York City and other areas outside Suffolk County at a financial cost to the County. (Reynolds Pls.' 56.1 ¶ 104.)

The law applies to "sponsoring agencies" and "substance abuse houses." A "sponsoring agency" is defined as

[a]n agency or unit of government, a voluntary agency, or any other person or organization which intends to construct, establish, expand, modify, or operate a substance abuse house with the use of government funds, assistance, sponsorship, property or approval.

S.C.C. § 450-2. A "substance abuse house" is defined as

[a] residential facility providing temporary (nondomicile) housing to at

least three individuals receiving treatment to recover from alcoholism or substance abuse, for which such temporary use and occupancy of the housing facilities the owner or primary tenant of the property receives compensation, either directly from the temporary occupant or through reimbursement from a third party on behalf of such temporary occupant or both. The spouse, issue, brother, sister, parent, brother-in-law, sister-in-law, parent-in-law, niece, nephew, grandmother, grandfather, great-grandparent, or cousin of an owner of the residential facility, which owner is also occupying the residential facility in question as his or her own domicile, shall not be deemed 'an individual receiving treatment' for the purposes of this definition. Said facility may also provide ancillary services such as counseling, treatment, or other support services.

S.C.C. § 450-2.

Four provisions of the local law are at issue in this case. First, under S.C.C. § 450-3, a sponsoring agency seeking to establish a substance abuse house in Suffolk County must provide notice of the proposed address of the home to both the chief executive officer of the relevant municipality and the county legislator representing the area in which the proposed substance abuse house is being considered. S.C.C. §§ 450-3(B) & (L). After receiving notification, the municipality has 40 calendar days to respond to the proposal, with three options: "(1) Approve the site recommended by the sponsoring agency; (2) Suggest one or more suitable alternative sites within the jurisdiction which could accommodate the facility; or (3) Object to the establishment of a

facility because there is not a need for the facility in the municipality or in the area in proximity to the facility or because to do so would result in such a concentration (i.e., more than four within a two-square-mile area) of substance abuse houses or other similar facilities in the municipality or in the area in proximity to the site selected that the nature and the character of the areas within the municipality would be substantially altered." *Id.* § 450-3(b). Prior to responding to the sponsoring agency, "the municipality may hold a public hearing, except in the case of a proposed substance abuse house for victims of domestic violence where confidentiality is required." *Id.* § 450-3(D). If the municipality responds with an alternative proposed site for the substance abuse house that is not satisfactory to the sponsoring agency, the sponsoring agency may so notify the municipality, which must respond with another proposed location within fifteen days. *Id.* § 450-3(G). If the municipality objects to the establishment of the proposed substance abuse house, or if the municipality and the sponsoring agency cannot mutually agree on a location, then either party may request that a hearing officer resolve the dispute, and such hearing must be held within 45 days of the request. *Id.* § 450-3(H). In adjudicating the dispute, the law prescribes the following standard of review for the hearing officer:

In reviewing any objection, the need for a substance abuse house in the municipality shall be considered as shall the existing concentration of such facilities in the municipality or the area in proximity to the site selected. The hearing officer shall sustain the objection if it is determined that there is not a need for the facility in the municipality or in the area in proximity to the facility if it is determined that the

establishment of the facility would result in such a concentration of substance abuse houses or other similar facilities in the municipality or in the area in proximity to the site selected such that the nature and character of the area would be substantially altered as a result of the establishment of a facility. The hearing officer shall make a determination within 15 days subsequent to the hearing.

*Id.* § 450(I). The decision of the hearing officer would be reviewable in a New York State Article 78 proceeding. *Id.* § 450(J).

The second provision of the local law at issue in this case is the requirement that each substance abuse house must have a "certified site manager" living on-site 24 hours per day, seven days per week. This requirement is codified in two separate sections of the law. First, within the site-selection provision, the law states that any substance abuse house is required, *inter alia*, to "have at least one New York State Office of Alcoholism and Substance Abuse Services certified site manager living on site 24 hours a day, seven days per week." *Id.* § 450-3(M)(2). This requirement is repeated, verbatim, within the section of the law relating to conditions for maintaining a valid license, codified at S.C.C. § 450-4(B)(8)(a).

Third, the law provides that no substance abuse house may "be occupied by more than six individuals receiving the substance abuse house services (i.e. exclusive of providers)." *Id.* § 450-3(M)(3). This provision is repeated, in a substantively similar manner, within the section of the law relating to conditions for maintaining a valid license. *See id.* § 450-4(B)(8)(b) (noting that a licensed substance abuse house must comply with the requirement

that "[i]t shall be occupied by no more than six individuals receiving the substance abuse house services (i.e., exclusive of providers)").

Finally, the owner, manager, or operator of a substance abuse house is required to apply for a license to operate and must pay a fee of $250 in connection with the license application. *Id.* § 450-4(A)(1)-(2). During the application process, the County is to conduct a character investigation of the applicant, who shall not have been convicted within three years of the application date of certain enumerated felonies, including sex crimes, public health and morals offenses, offenses relating to children, extortion, bribery, theft, or fraud. *Id.* § 450-4(A)(5). Licenses are valid for a period of one year and include an initial fee of $1,000 for the first year that a substance abuse house is in operation. *See id.* § 450-4(B)(1). Following the first term, a licensed substance abuse house may apply for license renewals on a yearly basis, upon payment of a $100 renewal application fee and a $250 renewal license fee. *See id.* §§ 450-4(A)(1), (B)(1). Substance abuse houses are subject to various inspection requirements, including the requirement that "any of its records required to be maintained by any municipality pursuant to any rules or regulations adopted hereunder shall be open to inspection at any time by the Division or its duly authorized agents at any reasonable time, including, but not limited to, normal business hours." *See id.* § 450-4(D)(1). In addition, the provision calls for both periodic unannounced inspections and requires covered substance abuse houses to retain records for a period of five years. *See id.* §§ 450-4(D)(1) & (4).

The local law provides that violations of the above-discussed provisions could result in civil and criminal penalties, including up to a one-year term of imprisonment for intentional violations of § 450-3(M). *See id.* § 450-9.

In about September 2003, Suffolk County agreed to stay enforcement of S.C.C. § 450 pursuant to an agreement with Oxford House in the Oxford House action. (Reynolds Pls.' 56.1 ¶ 141.) Defendant has taken no steps to enforce the law, even against affiliated programs. (*Id.* ¶ 143.)

## II. PROCEDURAL HISTORY

Plaintiff Human Resource Research and Management Group (hereinafter "HRRMG") filed a complaint against defendant Suffolk County (No. 03-cv-3777) on August 1, 2003. HRRMG filed an amended complaint, in which plaintiff Oxford House joined, on June 18, 2004. In the amended complaint, HRRMG and Oxford House allege that the Suffolk County local law S.C.C. § 450 violates: the Equal Protection Clause of the United States Constitution; 42 U.S.C. § 3604 (the "Fair Housing Act" or "FHA"); 42 U.S.C. 12131, *et seq.* (the "Americans With Disabilities Act" or "ADA"); the Due Process Clause of the New York State Constitution; and the New York State Mental Hygiene Law and the regulations of the New York State Office of Alcoholism and Substance Abuse Services. The amended complaint seeks the Court to annul the local law, enjoin defendant from enforcing the local law, award compensatory and punitive damages to plaintiffs, award attorney's fees to plaintiffs, and award any other relief the Court deems necessary.

The Reynolds plaintiffs filed a complaint against Suffolk County, the Suffolk County Department of Social Services, and the Suffolk County Department of Health Services on January 27, 2005 and filed an amended complaint on July 18, 2008 (No. 05-cv-0483).

The Reynolds plaintiffs allege that the local law violates: the Due Process and Equal Protection Clauses of both the United States and New York State Constitutions; the Fair Housing Act; the Americans With Disabilities Act; 29 U.S.C. § 794 (the "Rehabilitation Act"); New York State Social Services Law and Regulations; and New York State Mental Hygiene Law. In the amended complaint, the Reynolds plaintiffs also assert claims for breach of a Stipulation of Settlement in a federal case, *Weigel, et al. v. Wing and Wingate* (CV 98-4870) (hereinafter the "*Weigel* Settlement"), and breach of a Stipulation of Settlement in a state case (hereinafter the "*Switzer* Settlement"). The Reynolds plaintiffs seek the Court to annul S.C.C. § 450, permanently enjoin the defendants from enforcing the local law, direct the Suffolk County Department of Social Services to comply with the *Weigel* Settlement, direct the Suffolk County Department of Social Services to comply with the *Switzer* Settlement, award compensatory damages, and award any other relief deemed just and proper by the Court.

By letter dated January 12, 2009, plaintiff Oxford House requested a pre-motion conference in anticipation of filing a motion for summary judgment. By letter dated January 13, 2009, the Reynolds plaintiffs requested to participate in the same pre-motion conference in anticipation of filing their own motion for summary judgment. At the January 21, 2009 pre-motion conference, the Court set a briefing schedule for the summary judgment motions in both actions. Oxford House moved for summary judgment on May 21, 2009, requesting that the Court declare that the local law is unconstitutional and violates the federal anti-discrimination laws and enjoin defendant from enforcing the local law. The Reynolds plaintiffs moved for summary judgment on June 1, 2009, requesting the Court to declare the local law unconstitutional and in violation of the federal anti-discrimination laws, and further requested the Court to "declare that Suffolk County, SCDSS, and SCDOH have engaged in a pattern of discriminatory conduct against persons recovering from alcoholism and/or substance abuse and residing in sober homes, including persons referred to Suffolk County sober homes from treatment facilities and institutions outside Suffolk County and enjoin such conduct." (Reynolds Pls.' Br. at 64.) Defendant Suffolk County submitted one opposition to both motions for summary judgment on August 17, 2009. Oxford House replied on August 25, 2009. The Reynolds plaintiffs replied on August 31, 2009. Oral argument was held on October 2, 2009. This matter is fully submitted.

III. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir.

2004); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (emphasis in original)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

## IV. DISCUSSION

### A. Constitutional Avoidance

As a threshold matter, the Court declines to address whether S.C.C. § 450 violates the New York State Constitution or the United States Constitution because, as discussed below, the local law violates, and is therefore preempted by, the Fair Housing Act.[5] *See Larkin v. State of Mich. Dep't of Soc. Servs.*, 89 F.3d 285, 292 (6th Cir. 1996) ("Because the statutes at issue are preempted by the FHAA [Fair Housing

---

[5] The parties do not differentiate between plaintiffs' FHA and ADA claims. As the Second Circuit has held, "[d]ue to the similarities between the statutes, we interpret them in tandem. Although there may be differences in the FHAA [Fair Housing Amendments Act] and ADA, we see no material differences presented in this case and the parties have not identified any." *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003) (citing *Reg'l Econ. Action Cmty. Prog., Inc. v. City of Middletown*, 294 F.3d 35, 45-46 (2d Cir. 2002)); *Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 151 (2d Cir. 1999) ("Plaintiffs, however, do not contend that their claim under any one statute [the FHA, ADA, or Rehabilitation Act] differs from their claim under the others; accordingly we will analyze the three claims together."). The Court's analysis of the FHA claims therefore also applies to plaintiffs' ADA claims. The Court notes that, although the Reynolds plaintiffs asserted a claim under the Rehabilitation Act in their amended complaint, they have not moved for summary judgment on that claim. In any event, the Court's analysis of the FHA claims would apply to any Rehabilitation Act claims as well. Finally, while both plaintiffs alleged claims in their amended complaints that S.C.C. § 450 violated various provisions of New York State law, the parties did not brief these claims (and thus did not explain any reason to treat these claims differently from the FHA claims), and the Court therefore does not address them.

Amendments Act], we need not reach the equal protection claims."); *see also Nw. Austin Mun. Utility Dist. No. One v. Holder*, 129 S. Ct. 2504, 2513 (2009) ("[I]t is a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case." (quoting *Escambia County v. McMillan*, 466 U.S. 48, 51 (1984))).

## B. Plaintiffs' Fair Housing Act Claims

### 1. Oxford House's Standing[6]

Suffolk County argues that plaintiff Oxford House lacks standing to challenge S.C.C. § 450 because, it asserts, the existing Oxford House residence in East Farmingdale is not a covered entity under the plain terms of the law.[7] (*See* Def.'s Br.

---

[6] Suffolk County does not argue that the Reynolds plaintiffs lack standing. "Mindful of the necessity of standing to our jurisdiction," *see City of Middletown*, 294 F.3d at 46 n.2 (citation omitted), the Court notes that the Reynolds plaintiffs do in fact have standing. There is no dispute that the law would affect the Reynolds plaintiffs' residence in substance abuse houses or that the Reynolds plaintiffs have a need for the continued availability of sober homes in Suffolk County. *See, e.g.*, *Jeffrey O. v. City of Boca Raton*, 511 F. Supp. 2d 1339, 1347-48 (S.D. Fla. 2007) (standing existed for plaintiffs who previously lived in sober home to challenge law under the FHA because of, *inter alia*, significant risk of relapse).

[7] Defendant does not address whether the law would apply to any future substance abuse houses established by Oxford House in Suffolk County. Oxford House has presented evidence that it plans to establish more residences in New York, including in Suffolk County, and defendant

at 14-16.) For the reasons set forth below, the Court holds that Oxford House has standing to assert a facial challenge to S.C.C. § 450.

### a. Legal Standard

"Article III of the Constitution limits the judicial power of the United States to the resolution of cases and controversies. This limitation is effectuated through the requirement of standing." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009) (citing U.S. Const. art. III, § 2 and *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471-72 (1982)). "It is axiomatic that '[t]here are three Article III standing requirements: (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision.'" *Cooper*, 577 F.3d at 489 (quoting *Kendall v. Employees Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009)); *see also Lamar Advertising of Penn, LLC v. Town of Orchard Park, N.Y.*, 356 F.3d 365, 373 (2d Cir. 2004) ("To meet Article III's constitutional requirements for standing, a plaintiff must allege an actual or threatened injury to himself that is fairly traceable to the allegedly unlawful conduct of the defendant." (citations and quotation marks omitted)).

Standing under the Fair Housing Act is co-extensive with the reaches of Article III

---

presents no evidence to controvert that fact. (Oxford House Pl.'s 56.1 ¶ 61.) As discussed *infra*, the Court concludes that S.C.C. § 450 would apply to the East Farmingdale residence and any other such Oxford House residence, and Oxford House therefore does have standing.

standing. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982) (noting that standing under the FHA extends to the "full limits of Art. III"); *accord Fair Housing in Huntington Comm., Inc. v. Town of Huntington, N.Y.*, 316 F.3d 357, 362 (2d Cir. 2003). Therefore, a plaintiff may establish standing under the FHA without having to meet any "prudential" standing requirements that can apply to other types of claims. *See Comer v. Cisneros*, 37 F.3d 775, 787-89 (2d Cir. 1994). By it own terms, "[t]he FHA confers standing to challenge . . . discriminatory practices on any any 'aggrieved person,' . . . [which] include[s] 'any person who– (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur.'" *Le-Blanc-Sternberg v. Fletcher*, 67 F.3d 412, 424 (2d Cir. 1995) (quoting 42 U.S.C. § 3602(i)). In other words, a plaintiff has standing to allege violations of the FHA for *threatened* injury. *See Le Blanc-Sternberg*, 67 F.3d at 424 ("[T]he explicit grant of standing to anyone who believes he '*will* be injured by a discriminatory housing practice *that is about to occur*,' 42 U.S.C. § 3602(i) (emphasis added), means that a person who is likely to suffer such an injury need not wait until a discriminatory effect has been felt before bringing suit. Thus, where it has been established that a zoning ordinance will likely be applied in a discriminatory manner, it is unnecessary that the municipality actually so apply it before the ordinance may properly be challenged.").

An organization may have standing in two ways. *See Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 46 n.2 (2d Cir. 2002). First, an organization may file suit on its own behalf "'to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy.'" *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)). Second, an organization may sue on behalf of its members under the theory of organizational or associational standing. *See Connecticut v. Am. Elec. Power Co.*, 582 F.3d 309, 339 (2d Cir. 2009) ("'[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'") (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)); *see also City of Middletown*, 294 F.3d at 46 n.2 (finding that organizational standing existed under FHA for organization attempting to provide services to recovering alcoholics because members had discrimination claims, the interests were germane to the organization's purpose, and individual participation by members was not necessary); *Hovsons, Inc. v. Twp. of Brick*, 89 F.3d 1096, 1100 n.2 (3d Cir. 1996) (finding that entity that sought to construct nursing home facility had organizational standing to prosecute FHA action on behalf of "John Doe" plaintiffs who would have discrimination claims).

b. Application

As set forth below, the Court concludes that Oxford House has standing to bring the instant action both as an individual plaintiff and also as an organization on behalf of its members.

If S.C.C. § 450 were enforced against Oxford House, Oxford House would have to pay application and licensing fees, as well as restructure its organization to comply with the various requirements of the local law. Thus, Oxford House faces a substantial threat of injury. Suffolk County argues that Oxford House lacks standing in the instant case because the local law does not apply to the Oxford House residence in East Farmingdale – in other words, Suffolk County argues that Oxford House is not threatened with injury. Specifically, Suffolk County argues that the law is inapplicable to Oxford House because: (1) it does not constitute a "sponsoring agency" of the sober house in East Farmingdale because the residence was not established with government funds; (2) the East Farmingdale residence is not a "substance abuse house" under the definition provided by the law because its residents do not necessarily receive treatment services; and (3) Oxford House has not shown that any of its residents are disabled. The Court considers each of these arguments in turn and concludes that the law would in fact apply to Oxford House under its plain terms.[8]

First, the Court rejects Suffolk County's contention that Oxford House is not a regulated "sponsoring agency" under the law with respect to the East Farmingdale residence. As discussed above, S.C.C. § 450 defines "sponsoring agencies" as:

> [a]n agency or unit of government, a voluntary agency, or any other person or organization which intends to construct, establish, expand, modify, or operate a substance abuse house with the use of government funds, assistance, property or approval.

S.C.C. § 450-2. Defendant does not dispute that Oxford House established the East Farmingdale residence using $4,000 from a fund provided by New York State.[9] (Oxford House Pl.'s 56.1 ¶¶ 56-57; Molloy Aff., May

---

[8] In support of its argument that it has standing, Oxford House points to the testimony of Thomas MacGilvray, the highest ranking Suffolk County official responsible for dealing with issues of alcohol and substance abuse, that, in his opinion, Oxford House's activities are covered by S.C.C. § 450. (*See* Schonfeld Aff., May 21, 2009, Ex. E (hereinafter "MacGilvray Dep."), at 22; *see also* Schonfeld Aff., Aug. 25, 2009, Ex. A (hereinafter "MacGilvray Dep.") at 45.) The Court need not consider the probative value of MacGilvray's interpretation of the law because the Court concludes, as discussed *infra*, that the plain terms of the law cover Oxford House's activities.

[9] Defendant argues that the $4,000 from New York State does not constitute "government funds" because Oxford House can "exercise free choice over the expenditure of the funds." (Def.'s Br. at 15.) In support of this argument, defendant cites a First Amendment Establishment Clause case, *Locke v. Davey*, 540 U.S. 712 (2004), which merely reiterates the well-settled proposition that "the link between government funds and religious training is broken by the independent and private choice of recipients." *Id.* at 719. Defendant also cites *Allison Engine Co. v. United States ex rel. Sanders*, 128 S. Ct. 2123 (2008), *superseded by statute as stated in United States v. Science Applications, Intern. Corp.*, 653 F. Supp. 2d 87 (D.D.C. 2009), which deals with the entirely unrelated question of whether a federal False Claims Act plaintiff could proceed against a private entity that used government funds. *Allison Engine*, 128 S. Ct. at 2129. Both of the cited cases are inapposite. The fact that Oxford House is a private entity and may have had some choice in determining how to spend the $4,000 clearly does not mean that the $4,000 it received from New York State is not "government funds" under the plain terms of S.C.C. § 450.

21, 2009, ¶¶ 29-31.) Oxford House has also presented evidence that it has been working in conjunction with the New York State Office of Alcoholism and Substance Abuse since December 2008 to establish more sober homes throughout the state, including in Suffolk County.[10] (*See* Molloy Aff., May 21, 2009, ¶ 39.) On this record, Oxford House is plainly a "sponsoring agency" under § 450-2.

The Court also concludes that the Oxford House residence in East Farmingdale constitutes a "substance abuse house" under the local law. As discussed above, the law specifically defines a "substance abuse house" as:

> [a] residential facility providing *temporary* (nondomicile) housing to at least three individuals *receiving treatment* to recover from alcoholism or substance abuse . . . .

S.C.C. § 450-2 (emphasis added). Suffolk County argues that the East Farmingdale residence is not a "substance abuse house" because it houses residents for an indeterminate period of time and who *may not be* receiving treatment. In fact, the undisputed evidence indicates that *most* individuals in Oxford House residences stay there on a temporary basis, and often return to their families after brief stays (*see* Molloy Aff., Aug. 21, 2009, ¶¶ 3-4), and also

indicates that, on average, approximately half of all Oxford House residents are undergoing treatment while members of the houses (*see id.* ¶ 5). It is also undisputed that Oxford House residents on average attend twice as many alcoholics anonymous and/or narcotics anonymous meetings on a weekly basis than non-residents who are participating in such programs. (*See* Murphy Aff., Aug. 17, 2009, Ex. C (hereinafter "Molloy Dep."), at 29.) Based on this undisputed evidence, the Oxford House residence, at least at most times, falls within the definition of a "substance abuse house."

Although Suffolk County points to evidence indicating that at a given moment, the membership of the Oxford House residence in East Farmingdale could *potentially* have fewer than three temporary residents who are receiving treatment, the Court concludes that this does not strip Oxford House of standing. Oxford House is in the business of establishing, developing, and maintaining sober homes, and does so without establishing set time periods for residents to live there or limiting the number of residents who receive treatment at any given time. Unless Oxford House fundamentally changes its membership rules to avoid the reaches of the law, the frequent turnover in Oxford House residences establishes a substantial likelihood – in fact, a virtual certainty over even a short period of time – that the East Farmingdale residence or any other sober house established in Suffolk County will fall under the definition of "substance abuse house" pursuant to S.C.C. § 450, and thus be subject to potential civil and criminal penalties for non-compliance with the local law's requirements. *See, e.g.*, *Watson v. Dowling*, No. 93 Civ. 5839 (PKL), 1994 WL 319295, at *2 (S.D.N.Y. June 29, 1994) (holding that to establish standing,

---

[10] Although defendant purports to deny this fact, defendant does not present any evidence to controvert it, instead stating merely that Oxford House's allegations are "unproven and premised upon inadmissible material." (Def.'s Reply to Oxford House Pl.'s 56.1 ¶ 61.) The Court concludes that plaintiff's evidence is admissible and defendant's conclusory denial is insufficient to create a disputed issue of fact.

"plaintiff is not required to demonstrate absolute certainty of future harm" (citing *Kolender v. Lawson*, 461 U.S. 352, 355 n.3 (1983) and *Robidoux v. Celani*, 987 F.2d 931, 938 (2d Cir. 1993)). Accordingly, Oxford House faces a real threat of injury if S.C.C. § 450 is enforced.[11]

Finally, the Court rejects Suffolk County's argument that the residents of Oxford House are not "disabled." The FHA provides: "'Handicap' means, with respect to a person – (1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance . . . ." 42 U.S.C. § 3602(h). It is well settled that persons recovering from alcoholism or drug addiction, and who are thereby substantially limited in a major life activity, are considered disabled under the FHA. *See City of Middletown*, 294 F.3d at 46-48. Furthermore, such individuals who need the support of a "halfway house" to avoid a relapse to alcoholism or drug addiction qualify as disabled. *See id.*

In this case, it is undisputed that Oxford House residents "need to live in a supportive environment . . . with persons like themselves in order to avoid a relapse for long enough to develop comfortable sobriety."[12] (Oxford House Pl.'s 56.1 ¶ 50.) Suffolk County argues that the residents of Oxford House are not disabled because, according to Oxford House rules, they must abstain from the use of drugs or alcohol. However, as discussed above, individuals can be considered disabled for the purposes of the FHA if they are recovering from substance abuse issues, even if they are not current users. *See City of Middletown*, 294 F.3d at 46-48 (determining that individuals overcoming substance abuse

---

[11] The fact that Suffolk County is not currently enforcing S.C.C. § 450 does not take away Oxford House's standing to prosecute this action. *See Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392, 393 (1988) (holding that First Amendment plaintiffs had standing because "the law is aimed directly at plaintiffs, who, if their interpretation of the statute is correct, will have to take significant and costly compliance measures or risk criminal prosecution," and that the Court was not "troubled by the pre-enforcement nature of this suit. The State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise. We conclude that plaintiffs have alleged an actual and well-founded fear that the law will be enforced against them"). Although the County has agreed not to enforce the local law pursuant to a stipulation with Oxford House in 03-cv-3777 (*see* Reynolds Pls.' 56.1 ¶¶ 140-43), the County has not stated that it would not enforce the local law against Oxford House even if the Court upheld § S.C.C. 450. On the contrary, the record indicates that Suffolk County did intend to enforce the law after its passage. (*See* Schonfeld Aff., May 21, 2009, Ex. D, Letter of Thomas MacGilvray to N.Y.S. Office of Alcoholism and Substance Abuse Services, Aug. 6, 2003 ("I was recently informed by our county attorneys that it is expected that this Division will move forward in implementing the legislation.").) Indeed, in its brief on the instant motion, defendant does not argue that it will in fact not enforce S.C.C. § 450 against Oxford House, but instead argues only that Oxford House "does not appear to be affected by the terms of S.C.C. § 450." (Def.'s Br. at 14.) Because the Court concludes that Oxford House would be covered by the plain terms of the local law, as discussed above, Oxford House is threatened with injury and, therefore, has standing.

[12] Although defendant purports to deny this fact, defendant offers no evidence to controvert it. (*See* Def.'s Reply to Oxford House Pl.'s 56.1 ¶ 50.)

problems who had to live in halfway homes were disabled for purposes of the FHA); *Lakeside Resort Enters, LP v. Bd. of Supervisors of Palmyra Twp.*, 455 F.3d 154, 156 n.5 (3d Cir. 2006); *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 338-39 (6th Cir. 2002); *see also United States v. S. Mgmt. Corp.*, 955 F.2d 914, 917-23 (4th Cir. 1992). Furthermore, the statutory language of the Fair Housing Act makes clear that only those recovering from addiction, as opposed to current users, are considered disabled. *See* 42 U.S.C. § 3602(h); *see also* 24 C.F.R. § 100.201(a) ("Physical or mental impairment includes . . . drug addiction (other than addiction caused by current, illegal use of a controlled substance) and alcoholism.").

In sum, for the reasons stated above, the Court concludes that Oxford House has standing to prosecute the instant litigation as an individual plaintiff because it has demonstrated that it is substantially likely to be injured, that the injury would be caused by the enforcement of S.C.C. § 450, and that the injury would be redressed by the remedy sought in this action. In addition, the Court also concludes that Oxford House has standing to bring this action as an organization on behalf of its members, given that: (1) it serves a class of individuals with discrimination claims—individuals recovering from substance abuse; (2) the interests of the class are germane to Oxford House, which is in the business of developing and operating sober homes; and (3) no individual participation of class members is necessary because the instant litigation involves a facial challenge to S.C.C. § 450 and, therefore, does not require evidence regarding its application to particular individuals. Accordingly, the Court concludes that Oxford House has standing to prosecute the instant litigation. *See, e.g.*, *Tsombanidis*, 352 F.3d at 574 n.6 ("[I]t is clear that both Tsombanidis, as owner of the home, and [Oxford House, Inc.], as the parent organization, will incur an injury and have standing in this case.") (finding that plaintiffs had standing under the FHA and ADA).

### 2. FHA Claim on the Merits

Plaintiffs allege that S.C.C. § 450 is facially invalid under, and therefore preempted by, the FHA and seek an injunction against its enforcement.[13] For the reasons set forth below, the Court agrees, and enjoins defendant from enforcing the challenged provisions of the local law.

#### a. FHA Framework

In 1988, Congress amended the Fair Housing Act, otherwise known as Title VIII of the Civil Rights Act of 1968, to extend federal protections against housing discrimination to individuals with physical or mental disabilities. *See Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1498 (10th Cir. 1995) (citing 42 U.S.C. §§ 3602 & 3604). "Congress intended the FHA to protect the right of handicapped persons to live in the

---

[13] "[I]n enacting the federal law, Congress may explicitly define the extent to which it intends to pre-empt state law." *Mich. Canners & Freezers Ass'n v. Agric. Mktg. & Bargaining Bd.*, 467 U.S. 461, 469 (1984). The FHA expressly provides that any state or local law "that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid." 42 U.S.C. § 3615. Thus, to the extent that the challenged provisions of S.C.C. § 450 conflict with the FHA, the FHA preempts them. *See Larkin*, 89 F.3d at 289.

residence of their choice in the community." *City of Edmonds v. Wash. State Bldg. Code Council*, 18 F.3d 802, 806 (8th Cir. 1994), *aff'd*, 514 U.S. 725 (1995); *see also Bryant Woods Inn, Inc. v. Howard County, Md.*, 911 F. Supp. 918, 946 (D. Md. 1996) ("[T]he Act prohibits local governments from applying land use regulations in a manner that will exclude people with disabilities entirely from zoning neighborhoods, particularly residential neighborhoods, or that will give disabled people less opportunity to live in certain neighborhoods than people without disabilities." (citations omitted)). The FHA prohibits not only engaging in practices that cause the sale or rental of housing to be unavailable to disabled persons, 42 U.S.C. § 3604(f)(1), but also prohibits practices which impose discriminatory

> terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—(A) that person; or (B) a person residing in or intending to reside in that dwelling after it is so sold or rented, or made available; or (C) any person associated with that person.

42 U.S.C. § 3604(f)(2). The FHA also applies to municipal zoning decisions. *See City of Middletown*, 294 F.3d at 45-46.

A plaintiff can establish a violation under the FHA by proving discrimination in the form of: (1) disparate treatment or intentional discrimination, *see City of Middletown*, 294 F.3d at 48; (2) disparate impact of a law, practice or policy on a covered group, *see, e.g.*, *Huntington Branch,*

*NAACP v. Town of Huntington*, 844 F.2d 926, 933 (2d Cir. 1988), *aff'd*, 488 U.S. 15 (1988); or (3) by demonstrating that the defendant failed to make reasonable accommodations in rules, policies, or practices so as to afford people with disabilities an equal opportunity to live in a dwelling. *City of Middletown*, 294 F.3d at 45 (citing 42 U.S.C. § 3604(f)(3)(B)).

The Court analyzes plaintiffs' FHA claims of facial discrimination under the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See City of Middletown*, 294 F.3d at 48-49. To establish a prima facie case of intentional discrimination under the FHA, plaintiffs must present evidence that "animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive." *Id.* at 49 (quoting *LeBlanc Sternberg*, 67 F.3d at 425). If the plaintiffs make out a prima facie case, the burden shifts back to the defendant to "provide a legitimate, nondiscriminatory reason for their decision." *Id.* If the defendant meets that burden, then the burden shifts back to plaintiffs to prove that defendant intentionally discriminated against them on a prohibited ground and that the proffered reason is a mere pretext. *Id.*

In the instant case, it is undisputed that S.C.C. § 450 is discriminatory on its face, in that it imposes restrictions and limitations solely upon a class of disabled individuals – people who are seeking treatment to recover from drug and alcohol addition – that are not generally imposed on others seeking to live in Suffolk County. The law does not regulate apartment houses, multiple dwellings,

fraternity and sorority houses, dormitories, or otherwise impose *any* restrictions on a group of unrelated individuals who are not receiving treatment for addiction from living together. Accordingly, plaintiffs have proven their prima facie case under the FHA, and the burden shifts to Suffolk County to provide adequate justification for the disparate treatment of this disabled class of individuals affected by S.C.C. § 450. *See Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1050 (9th Cir. 2007) ("With regard to facially discriminatory housing policies . . . a plaintiff makes out a prima facie case of intentional discrimination under the [FHA] merely by showing that a protected group has been subjected to explicitly differential . . . treatment." (citation and internal quotation marks omitted)); *Larkin*, 89 F.3d at 290 ("[S]tatutes that single out for regulation group homes for the handicapped are facially discriminatory. . . . Because the statutes at issue are facially discriminatory, the burden shifts to the defendant to justify the challenged statutes."); *accord Bangerter*, 46 F.3d at 1500-01; *Sharpvisions, Inc. v. Borough of Plum*, 475 F. Supp. 2d 514, 523 (W.D. Pa. 2007).

The parties do not dispute that resolution of plaintiffs' FHA claim rests on whether Suffolk County has an adequate justification for the disparate treatment of the disabled class of individuals affected by S.C.C. § 450. However, the parties do dispute what level of scrutiny the Court should apply in evaluating the adequacy of Suffolk County's proffered justifications.

b. Level of Scrutiny for FHA Disparate Treatment Claim

The Second Circuit has not directly decided what level of scrutiny applies to an FHA claim where the plaintiffs allege disparate treatment. Defendant urges the Court to consider only whether the challenged law has a rational basis.[14] However, in the context of *disparate impact* FHA claims, the Second Circuit applies heightened scrutiny: "If a plaintiff makes a prima facie showing, the burden shifts to the defendant to 'prove that its actions furthered, in theory and in practice, a legitimate, bona fide governmental interest and that no alternative would serve that interest with less discriminatory effect.'" *Tsombanidis*, 352 F.3d at 575 (quoting *Town of Huntington*, 844 F.2d at 936); *see also Oxford House, Inc. v. Town of Babylon*, 819 F. Supp. 1179, 1183 (E.D.N.Y. 1993) (applying heightened scrutiny to government justification for the

---

[14] In support of its argument, defendant cites *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001) in which, defendant argues, the Supreme Court "implicitly endorsed the application of rational basis scrutiny" for ADA claims. (Def.'s Br. at 20.) In *Garrett*, however, the Court addressed the unrelated question of whether Congress had the power to abrogate the states' Eleventh Amendment sovereign immunity through the ADA, and concluded that Congress did not have that power. *Id.* at 374. Contrary to defendant's argument, the Court did not endorse, explicitly or implicitly, a rational basis level of scrutiny for ADA claims. *See id.* at 367-68 ("[T]he result of *Cleburne* is that States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational. . . . If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause.").

discriminatory disparate impact of a facially neutral town ordinance as applied to sober home residents. While there currently exists a split among the circuits regarding "the appropriate standard for evaluating the validity of state statutes that are facially discriminatory under the FHA," *Sierra v. City of N.Y.*, 552 F. Supp. 2d 428, 429 (S.D.N.Y. 2008), the Court concludes, as discussed below, that heightened scrutiny applies to FHA disparate treatment claims.

The Eighth Circuit, standing alone, subjects statutes that facially discriminate against the disabled to "rational basis" scrutiny, in accordance with the identical standard applied to constitutional claims regarding disability discrimination under the Equal Protection Clause because the disabled are not considered a "suspect class" under the Constitution. *See Oxford House-C v. City of St. Louis*, 77 F.3d 249, 252 (8th Cir. 1996); *see also Familystyle of St. Paul, Inc. v. City of St. Paul, Minn.*, 923 F.2d 91, 94 (8th Cir. 1991). Under the rational basis test, a law will be upheld "upon a finding that it is 'rationally related to a legitimate state interest.'" *Sierra*, 552 F. Supp. 2d at 429 (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985)). The rational basis test "does not pass judgment upon the wisdom, fairness, or logic of legislative decisions; it turns on whether there are 'plausible' reasons for Congress's choices." *Weinstein v. Albright*, 261 F.3d 127, 140 (2d Cir. 2001) (citation omitted).

However, all of the other circuits to have considered the appropriate standard in this context – including the Sixth, Ninth, and Tenth Circuits – have explicitly rejected the rational basis test and have concluded that heightened scrutiny is required for claims of intentional discrimination against disabled individuals under the FHA. The FHA "specifically makes the handicapped a protected class for the purposes of a statutory claim—they are the direct object of the statutory protection—even if they are not a protected class for constitutional purposes."[15] *Bangerter*, 46 F.3d at 1503; *see also Cmty. House*, 490 F.3d at 1050 ("[T]he Eighth Circuit's approach is inappropriate for Fair Housing Act claims because some classes of persons specifically protected by the Fair Housing Act, such as families and the handicapped, are not protected classes for constitutional purposes."); *Larkin*, 89 F.3d at 290 (rejecting rational basis level of scrutiny); *see also Sierra*, 552 F. Supp. 2d at 430 (discussing stricter level of scrutiny applied by Sixth, Ninth and Tenth Circuits).[16]

[15] While the Supreme Court applied rational basis scrutiny with respect to a Fourteenth Amendment claim alleging disability discrimination, *Cleburne*, 473 U.S. 432, that case predated the 1988 FHA amendments that added persons with mental disabilities to the list of protected persons under the statute.

[16] District courts also have rejected the rational basis test for FHA disparate treatment claims. In *Sierra v. City of N.Y.*, 552 F. Supp. 2d 428 (S.D.N.Y. 2008), the court agreed with the rationale of the Sixth, Ninth, and Tenth Circuits that the rational basis test was inappropriate to assess whether a state law violates the FHA, holding that because "Congress has promulgated a more specific prohibition addressed to a more specific protected class . . . a more heightened scrutiny is appropriate in order to assure that Congress's specific mandate is not thwarted." *Id.* at 430-31. Other district courts have also consistently rejected the rational basis level of scrutiny for laws which discriminate on their face against the disabled, for substantially the same reasons. *See, e.g., Jeffrey O. v. City of Boca Raton*,

This Court agrees with the overwhelming majority of courts that heightened scrutiny is the appropriate standard for evaluating laws that facially discriminate against the disabled under the FHA. Applying the more deferential rational basis level of scrutiny would plainly undermine the FHA, which extends explicit housing protections to the disabled. *See Cmty. House*, 490 F.3d at 1050; *see also Bangerter*, 46 F.3d at 1503; *Sierra*, 552 F. Supp. 2d at 430-31. Indeed, it would defy logic to apply stricter scrutiny to a municipality's justification for a generally applicable law with an allegedly discriminatory impact, *see Tsombanidis*, 352 F.3d at 575, than to a justification for a law that facially discriminates by *targeting* an FHA-protected class. Therefore, the Court concludes that Suffolk County has the burden to demonstrate that its justification for treating disabled individuals differently from the general population through implementation of S.C.C. § 450 is warranted under a heightened level of scrutiny.

Before addressing plaintiffs' challenges to S.C.C. § 450 on the merits, the Court notes that the precise formulation of the heightened scrutiny test with respect to similar FHA claims varies slightly from court to court. As discussed above, with respect to disparate impact claims, the Second Circuit puts the burden on the defendant to prove that "its actions furthered, in theory and in practice, a legitimate, bona fide, governmental interest and that no alternative would serve that interest with less discriminatory effect." *Tsombanidis*, 352 F.3d at 575 (quotation omitted). The district court in *Sierra* applied this same heightened scrutiny formulation to a disparate treatment claim, and reasoned that the standard articulated by the Second Circuit "is essentially a broader wording of the standard adopted by the Ninth Circuit in *Community House* in the same context as here, *see* 490 F.3d at 1050, and, for the reasons there stated, makes perfect sense in this case." *Sierra*, 552 F. Supp. 2d at 431; *cf. Oxford House, Inc. v. Town of Babylon*, 819 F. Supp. 1179, 1183 (E.D.N.Y. 1993) (applying *Town of Huntington*, 844 F.2d at 936, heightened scrutiny test to claim of disparate impact discrimination against sober home residents in enforcement of generally applicable ordinance against Oxford House residence in East Farmingdale). The most commonly applied standard is that articulated by the Ninth and Tenth Circuits, pursuant to which facially discriminatory restrictions pass muster under the FHA only if the defendant shows either "(1) that the restriction benefits the protected class or (2) that it responds to legitimate safety concerns raised by the individuals affected, rather than being based on stereotypes." *Cmty. House*, 490 F.3d at 1050; *see also Bangerter*, 46 F.3d at 1503-04. With respect to restrictions that purport to benefit the protected class, they are acceptable only where they are narrowly tailored, and "the benefit to the handicapped in their housing opportunities clearly outweigh[s] whatever burden may result to them." *Bangerter*, 46 F.3d at 1504. The Sixth Circuit adopted a slightly different formulation, stating that "in order for facially discriminatory statutes to survive a challenge under the FHAA, the defendant must demonstrate that they are 'warranted by the

511 F. Supp. 2d 1339, 1351 (S.D. Fla. 2007); *see also Cmty. Hous. Trust v. Dep't of Consumer and Regulatory Affairs*, 257 F. Supp. 2d 208, 229 (D.D.C. 2003); *accord United States v. City of Chicago Heights*, 161 F. Supp. 2d 819, 838 (N.D. Ill. 2001).

unique and specific needs and the abilities of those handicapped persons' to whom the regulations apply." *Larkin*, 89 F.3d at 290 (quoting *Murbrunak, Inc. v. City of Stow, Ohio*, 974 F.2d 43, 47 (6th Cir. 1992)).

The Court need not determine which precise formulation of heightened scrutiny is appropriate, however, because, as set forth below, the challenged provisions of S.C.C. § 450 are unlawful under any of the above-discussed heightened scrutiny tests, all of which require a narrow tailoring of the discriminatory law to suit the asserted government interest. Upon examination of the record in this case, the Court concludes that defendant has failed to present any evidence, apart from scattered anecdotes and unsupported generalizations, in support of its justification for the challenged portions of the law and that, in any event, the challenged provisions have so broad an application that no rational trier of fact could find them to be narrowly tailored under a heightened scrutiny standard.

c. Application of Heightened Scrutiny to S.C.C. § 450

Plaintiffs challenge four specific provisions of S.C.C. § 450 as constituting unlawful discrimination under the FHA with respect to regulated "substance abuse houses": (1) the site-selection provision; (2) the requirement of a 24/7 site manager; (3) the limitation that only six unrelated individuals may reside in a regulated substance abuse house; and (4) registration and inspection requirements. The Court discusses each provision in turn, and, as set forth below, concludes that all of the challenged provisions violate the FHA.

Although, as discussed below, the Court discusses and rejects as unsatisfactory the purported government interests with respect to each specific challenged provision, the Court notes, as a threshold matter, that the record indicates that the law was enacted primarily based on the political force of 4,000 citizen petitions and sparse anecdotal testimony regarding certain individuals with substance abuse problems in Suffolk County. In drafting S.C.C. § 450, the County did not consider any documents as evidence apart from the various citizen petitions. (Oxford House Pl.'s 56.1 ¶ 30.) The Court also notes that Thomas MacGilvray, the highest ranking official in the Suffolk County Department of Health regarding substance abuse, was not involved in the drafting of the local law, nor was he consulted by the legislature in connection with the local law.[17]   (*See* MacGilvray Dep. at 22, 45.) Based upon the undisputed record, as set forth in detail below, the Court concludes that defendant cannot meet its burden to show that the discriminatory aspects of S.C.C. § 450 are justified under heightened scrutiny. The Court recognizes that, if there were any disputed issues of material fact, then this claim could not be decided on summary judgment, but rather would need to be decided at trial. However, even construing the evidence most favorably to Suffolk County, S.C.C. § 450 cannot possibly satisfy heightened scrutiny as a matter of law for the reasons discussed below. *See, e.g., Larkin*, 89 F.3d 285 (affirming summary judgment for plaintiffs in FHA case involving group

---

[17]   As discussed *infra*, it is MacGilvray's uncontroverted testimony that not all of the challenged provisions of S.C.C. § 450 are necessary for all persons recovering from substance abuse.  (*See* MacGilvray Dep. at 53, 58, 129-31.)

homes for the disabled); *Town of Babylon*, 819 F. Supp. at 1186 (granting summary judgment for plaintiff in FHA case involving substance abuse homes); *see also United States v. Starrett City Assocs.*, 840 F.2d 1096 (2d Cir. 1988) (affirming summary judgment for plaintiffs on FHA claims involving racial quotas in housing). Therefore, summary judgment on this issue is warranted in plaintiffs' favor.

### i. Site-Selection Provision

As discussed above, S.C.C. § 450 establishes a procedure for the site-selection of substance abuse houses that does not apply to any other type of home. Because the law facially discriminates, plaintiffs have met their prima facie burden, and the Court must consider whether Suffolk County has provided sufficient justification for the law. For the reasons stated below, the Court concludes that Suffolk County has not satisfied its burden to justify the site-selection provision under heightened scrutiny, and the local law therefore violates the FHA.

Suffolk County asserts it has a legitimate interest in ensuring that "there be some level of uniformity and dispersal of these substance abuse houses, so that one neighborhood's resources and facilities are not unduly drained while others are unaffected."[18] (Def.'s Br. at 25.) In connection with this purported interest,

Suffolk County points to the following evidence presented to the Suffolk County legislature: (1) the testimony of a Brookhaven resident that there was an increase from 29 to over 40 substance abuse homes in the Mastic & Shirley community over a period of three years (Aff. of Patrick M. Murphy, Aug. 17, 2009, Ex. A (hereinafter "County Legislature Minutes") at 170-71);[19] (2) the testimony of a legislator that the substance abuse houses were bankrupting local food pantries (*id*. at 231); and (3) the testimony of one of the Reynolds plaintiffs that some substance abuse residents sought food from local food pantries (Murphy Aff., Aug. 17, 2009, Ex. G, at 33).

Suffolk County's purported interest in achieving a level of uniformity and dispersal fails to satisfy any formulation of heightened scrutiny. In *Larkin*, the Sixth Circuit confronted a similar facially discriminatory regulation which mandated a 1,500-foot space between group homes for the mentally disabled. The government in that case attempted to justify the regulation on the ground that it helped the disabled become integrated into the community and prevented "clustering" and "ghettoization." 89 F.3d at 291. Applying heightened scrutiny, the Sixth Circuit rejected the government interest, noting that the interest stood in direct conflict with the FHA's purpose of allowing disabled individuals to reside in the community of

---

[18] Defendant also argues that the local law would help the residents of substance abuse houses to assimilate and would help to eliminate discord between them and their neighbors. (Def.'s Br. at 25.) However, as discussed *infra*, defendant offers no evidence in support of these interests.

[19] The president of the Chamber of Commerce for the Mastic & Shirley community also offered testimony calling for regulation that would allow sober homes "without placing an undue burden on any community." (County Legislature Minutes at 172-73.)

their choosing.[20]  *See id.* ("The [FHA] protects the right of individuals to live in the residence of their choice in the community. If the state were allowed to impose quotas on the number of minorities who could move into a neighborhood in the name of integration, this right would be vitiated." (citation omitted)) (affirming grant of summary judgment to plaintiff).  Other courts have similarly rejected the proposition that the government has a legitimate interest in preventing the clustering of group homes in order to benefit disabled individuals.  *See, e.g.*, *City of Chicago Heights*, 161 F. Supp. 2d at 837, 839 (N.D. Ill. 2001) (striking down statute imposing 1,000-foot spacing requirement where defendant asserted an interest to "facilitate normalization" and to "preserve the residential character of the neighborhood"); *Oconomowoc Resid. Progs., Inc. v. City of Greenfield*, 23 F. Supp. 2d 941, 954-55 (E.D. Wisc. 1998) (finding that 2,500 foot spacing requirement as applied to group homes for the mentally disabled was preempted under the FHA); *Horizon House Developmental Servs., Inc. v. Twp. of Upper Southampton*, 804 F. Supp. 683, 694-95, 697 (E.D. Pa. 1992) ("There is no evidence in the record to support the

perception that group homes are a 'burden' on the neighborhood or that harm will come to the residents of the group homes by living within 1,000 feet of each other.").  The Court concludes that Suffolk County has failed to show that it has a legitimate interest in uniform dispersal of substance abuse houses.[21]

---

[20] The Second Circuit has similarly rejected under the FHA racial quotas in housing where the defendant asserted a need to promote racial integration.  *See United States v. Starrett City Assocs.*, 840 F.2d 1096, 1102 (2d Cir. 1988) ("[Defendant's] quotas do not provide minorities with access to [defendant's housing], but rather act as a ceiling to their access.  Thus, the impact of [defendant's] practices falls squarely on minorities, for whom Title VIII was intended to open up housing opportunities.") (affirming summary judgment for plaintiffs on FHA claims).

---

[21]  The Court also rejects Suffolk County's argument that the law does not actually limit the number of substance abuse houses in an area, but rather limits the municipality's ability to object to the location of such housing. Defendant argues that a municipality can object only if the proposed house location results in "more than four within a two-square-mile area *and* the proposed location must "result in a substantial alteration of the nature and character of the area in which it is to be located." (Defs.' Br. at 11-12 (citing S.C.C. § 450-3(B)(3)).)  Defendant's argument is contrary to the plain language of the law. In fact, the law permits the community to object on the simple basis that there is no "need" for the facility in the municipality or in the area.  S.C.C. § 450-3(B)(3); § 450-3(I).  Under the plain terms of the law, then, a municipality can object to the location of a substance abuse home in a particular community even if there are no such establishments in the community at all, based on an assessment that the house is not needed.  This extremely vague and flexible standard for municipal objections is in direct conflict with the overarching goal of the FHA to allow protected individuals—including disabled persons—to "live in the residence of their choice in the community."  *City of Edmonds*, 18 F.3d at 806; *see also Oconomowoc Resid. Progs. v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002) ("The FHAA 'prohibits local governments from applying land use regulations in a manner that will . . . give disabled people less opportunity to live in certain neighborhoods than people without disabilities.'" (citation omitted)).  In any event, even if the Court overlooked the plain language of the local law and read it as defendant suggests, the Court concludes that the site-selection provision would still violate the FHA for the reasons

The site-selection provision also does not satisfy either of the elements of the most commonly implemented Ninth Circuit standard in *Community House*, which permits a facially discriminatory law only upon a government showing: "(1) that the restriction benefits the protected class; or (2) that it responds to legitimate safety concerns raised by the individuals affected, rather than being based on stereotypes." 490 F.3d at 1050. Although defendant asserts in passing that the site-selection provision would help the disabled assimilate and would help eliminate discord between them and neighbors (Def.'s Br. at 25), defendant points to no evidence to support this assertion. The Court also concludes that the site-selection provision does not respond to legitimate community concerns that are not based on unsupported generalizations. As discussed above, the only evidence that Suffolk County offers in support of its purported interest in uniform dispersal of substance abuse houses is anecdotal testimony presented to the legislature regarding the proliferation of such homes in a particular community, and pressures placed on local food banks. This sparse testimony of neighbors opposing substance abuse homes is insufficient as a matter of law to justify the broadly applicable site-selection provision. *See, e.g.*, *Oconomowoc*, 300 F.3d at 786 ("[Defendant] cannot, however, rely on the anecdotal evidence of neighbors opposing the group home as evidence of unreasonableness [of the requested zoning accommodation]. A denial of a variance due to public safety concerns or concerns for the safety of the residents themselves cannot be based on blanket stereotypes about disabled persons rather than particularized concerns about

discussed *infra*.

individual residents." (citing *Bangerter*, 46 F.3d at 1503-04)).

Assuming *arguendo* that Suffolk County had shown a legitimate interest in achieving a uniform dispersal of substance abuse homes to preserve community resources or in helping the disabled assimilate, the site-selection provision is not narrowly tailored to satisfy any such interests.[22] *See Larkin*, 89 F.3d at 292 (noting that spacing requirement was "too broad, and is not tailored to the specific needs of the handicapped" in relation to stated government interest). In other words, Suffolk County has not shown that the restriction is "warranted by the unique and specific needs and the abilities of those handicapped persons to whom the regulations apply." *Larkin*, 89 F.3d at 290. Instead, the site-selection provision applies to all substance abuse houses without regard to the particular characteristics of individual residents of the houses. Thus, defendant has not shown that "its actions furthered, in theory and in practice, a legitimate, bona fide governmental interest and that no alternative would serve that interest with less discriminatory effect." *Tsombanidis*, 352 F.3d at 575.

Suffolk County also has not provided adequate justification for the public notification aspect of the site-selection process, codified at S.C.C. § 450-3(D), which provides that, "[p]rior to forwarding a response to the sponsoring agency, and the Commissioner, the municipality may hold a

[22] The Court does not express an opinion on whether a more narrowly tailored law with respect to the site-selection provision, or with respect to any other provision discussed in this opinion, would pass muster under the FHA. *See, e.g.*, *Larkin*, 89 F.3d at 292 n.4.

public hearing . . . ." To the extent that Suffolk County relies on the same rationale it advances for the site-selection provision generally, public notification of a proposed substance abuse house has "little relationship to the advancement of [that] goal[]." *Larkin*, 89 F.3d at 292 (finding that proffered government interest in dispersal and integration did not justify public notice requirement under FHA). In addition, courts have specifically warned that public notice can actually cut against the purported interest of integrating disabled individuals into a community, "as it would more likely have quite the opposite effect, as it would facilitate the organized opposition to the home, and animosity towards its residents." *Id.*; *see also Potomac Group Home Corp. v. Montgomery County, Md.*, 823 F. Supp. 1285, 1296 (D. Md. 1993) ("[N]otices of this sort galvanize neighbors in their opposition to the homes."). In *Oxford House, Inc. v. Town of Babylon*, 819 F. Supp. 1179 (E.D.N.Y. 1993), the court found that the residents of Babylon had previously organized in a "hostile" manner at a public hearing to oppose the Oxford House residence in East Farmingdale, making it clear that that they "did not want recovering individuals living in their neighborhood." *See id.* at 1184-85. Accordingly, based upon the undisputed facts in the record, the Court concludes that Suffolk County cannot meet its burden to justify the public notification aspect of the site-selection provision.

In sum, the Court concludes that the site-selection provision of S.C.C. § 450 is facially invalid under, and therefore preempted by, the FHA.

ii. 24/7 Site Manager

Plaintiffs also challenge the validity of the requirement imposed by S.C.C. § 450 that regulated substance abuse homes must include "at least one New York State Office of Alcoholism and Substance Abuse Services certified site manager living on site 24 hours a day, seven days per week."[23] As with the rest of S.C.C. § 450, the requirement for a 24/7 live-in site manager subjects individuals recovering from substance abuse problems to disparate treatment under the law because the restriction does not apply to any other individual or group of people in Suffolk County. Therefore, defendant has the burden of articulating a sufficient justification for the law. Suffolk County argues that the "law is aimed at ensuring that the recovering residents are receiving proper support and supervision in order to aid their treatment." (Def.'s Br. at 13.) For the reasons stated below, this justification fails to meet defendant's burden under a heightened scrutiny standard.[24]

_____

[23] It is undisputed that there is, in fact, currently no such position. (Def.'s Reply to Oxford House Pl.'s 56.1 ¶ 14.) Oxford House argues, therefore, that the law effectively prohibits the existence of any substance abuse house in Suffolk County because it requires such houses to be staffed by a non-existent person. (Oxford House Pl.'s Br. at 21.) Defendant argues that the legislature intended to create such a position. (Def.'s Reply to Oxford House Pl.'s 56.1 ¶ 14.) The Court accepts defendant's explanation as true for purposes of this motion and, in any event, concludes that the provision is invalid under the FHA for the reasons discussed *infra*.

[24] Defendant's brief mentions only the government interest of aiding treatment, and defendant's counsel did not point to any other rationale at oral

Suffolk County has failed to provide *any* evidence to support its contention that individuals attempting to recover from substance abuse problems require a 24/7 site manager. In fact, when challenged at oral argument to identify the evidence in support of its claim that all substance abuse houses required a 24/7 live-in site manager, defendant's counsel merely responded that the site manager was required because, by definition, at least three people in the home would be receiving treatment for substance abuse. This circular and conclusory assertion, which is the only evidence offered by defendant in support of the purported justification for the law, does not meet defendant's burden.

Furthermore, a 24/7 site manager requirement imposes real burdens on the class of disabled individuals that it purports to benefit, and defendant has failed to present any evidence that these burdens are outweighed by the purported benefit. *See Bangerter*, 46 F.3d at 1504. First, it is undisputed that the requirement would impose a significant monetary cost on the operation of substance abuse houses. (*See* Molloy Aff., May 21, 2009, ¶ 14 ("Hiring an unnecessary manager would also result in a prohibitive cost to the residents or taxpayers that would deter them from banding together in a supportive manner to further their

recovery from alcoholism and substance abuse on their own.").) This additional cost thus has the adverse impact of making housing less available to this class of disabled individuals, contrary to the purposes of the FHA. *See Marbrunak, Inc. v. City of Stow, Ohio*, 974 F.2d 43, 46 (6th Cir. 1992) ("The expense that would result from complying with needless safety requirements amount to an onerous burden which has the effect of limiting the ability of these handicapped individuals to live in the residence of their choice."). In addition, plaintiffs have presented evidence, which defendant has failed to controvert, that the presence of a full-time authority figure can be potentially detrimental to the recovery of these individuals, and frustrates the privacy of these individuals and their ability to achieve an independent and normal living setting.[25] *See Bangerter*, 46 F.3d at 1504 (FHA seeks to promote "the goal of independent living" for disabled individuals) (reversing grant of defendant's motion to dismiss); *Laflamme v. New Horizons, Inc.*, 605 F. Supp. 2d 378, 390 (D. Conn. 2009).

---

argument. To the extent that Suffolk County also seeks to justify the law based on public safety issues—specifically that 24/7 supervision is required to ensure that residents do not pose a safety threat to the community—the Court rejects that interest for the same reasons it is rejected in support of the six-person limit restriction, discussed *infra*.

[25] Plaintiff Oxford House has presented uncontroverted evidence that the presence of a 24/7 site manager could actually harm the disabled individuals in Oxford House residences. (*See* Molloy Aff., May 21, 2009, ¶ 13 ("House managers are counterproductive to recovery, since, from our experience, they would create a 'we versus them' relationship arising from an unwanted authority relationship rather than the egalitarianism present in Oxford House residence where the residents are able to run their own homes, accept responsibility inherent in the various duties of being elected to office within the house and bond together in a supportive manner for the common mission of remaining sober"); *see also* MacGilvray Dep. at 58 (conceding that a site manager could potentially be counterproductive to recovery).)

Based on the foregoing, the Court concludes that Suffolk County has failed to show that it has a legitimate interest in requiring a 24/7 site manager at all substance abuse houses.

In addition, the lack of evidence supporting the justification precludes any potential finding of narrow tailoring, or that the provision is "warranted by the unique and specific needs and abilities of those handicapped persons." *See, e.g.*, *Bangerter*, 46 F.3d at 1504 (rejecting government attempt to justify 24/7 supervision requirement based upon a benefit to individuals residing in group home, noting "no evidence or pleadings . . . to support a conclusion that the residents of this particular home were so mentally disabled that they needed 24-hour supervision"). Indeed, Suffolk County concedes that "[p]eople residing in housing for persons recovering from alcoholism and/or substance abuse do not all have the same needs or staffing needs."[26] (Oxford Pl.'s 56.1 ¶ 34.) Under S.C.C. § 450, however, Suffolk County imposes the same blanket requirement of a 24/7 site manager on all substance abuse houses, without any differentiation based on the needs of a home's particular residents. *See Larkin*, 89 F.3d at 290 (holding that in order for facially discriminatory statutes to survive a challenge under the FHA, the defendant must demonstrate that they are "warranted by the unique and specific needs and

abilities of those handicapped persons" to whom the regulations apply (citation omitted)); *Bangerter*, 46 F.3d at 1504 ("Restrictions that are based upon unsupported stereotypes or upon prejudice and fear stemming from ignorance or generalizations, for example, would not pass muster. However, restrictions that are narrowly tailored to the particular individuals affected could be acceptable under the [FHA] if the benefit to the handicapped in their housing opportunities clearly outweigh[s] whatever burden may result to them."). Thus, defendant's proffered justification does not withstand heightened scrutiny because defendant has failed to show that "its actions furthered, in theory and in practice, a legitimate, bona fide governmental interest and that no alternative would serve that interest with less discriminatory effect." *See Tsombanidis*, 352 F.3d at 575.

Accordingly, the Court concludes that the 24/7 live-in site manager requirement is facially invalid under, and therefore preempted by, the FHA.

### iii. Six-Person Limitation

Plaintiffs also challenge the validity of the requirement imposed by S.C.C. § 450 that substance abuse homes may not be occupied by more than six individuals who are receiving treatment for substance abuse. As with the rest of S.C.C. § 450, the six-resident limitation subjects individuals recovering from substance abuse problems to disparate treatment under the law, as the restriction is not applied to any other persons in Suffolk County. Therefore, defendant has the burden of articulating a sufficient justification for the law. Suffolk County argues that the requirement "is imposed in order to avoid

---

[26] Defendant also does not controvert the testimony of Thomas MacGilvray that a 24/7 site manager is not necessary for all substance abuse homes. (*See* Oxford House 56.1 ¶ 14; MacGilvray Dep. at 129-30 ("Q. Does every substance abuse home need a live-in counselor to be – to promote recovery? A. Every? Q. Every. A. No.").)

overcrowding, ensure proper supervision and to avoid the generating of excessive debris." (Def.'s Br. at 13.) At oral argument, when asked to articulate evidentiary support for this purported government interest, defendant's counsel responded by pointing to: (1) 4,000 petitions in support of the law; and (2) testimony by citizens before the county legislature regarding a stabbing, public urination, and an alleged incident involving an attempt by a sober home resident to jump off of a highway overpass.[27] For the reasons set forth below, the Court concludes that defendant has failed to proffer any legally sufficient evidence in support of its position that S.C.C. § 450 furthers the asserted government interests, and thus fails to satisfy heightened scrutiny.

As an initial matter, defendant cannot satisfy its burden under heightened scrutiny merely by pointing to the number of petitions in support of the law, as the democratic process alone is insufficient to justify an otherwise unlawfully discriminatory law. *See City of Middletown*, 294 F.3d at 49 (holding that plaintiff can proceed with FHA claim where "animus against the protected group was a significant factor in the position taken by the municipal decision-makers themselves *or by those to whom the decision-makers were knowingly*

---

[27] At oral argument, defendant also offered the conclusory and circular justification that the six-person limitation is necessary because a covered house would, by definition, include more than three individuals receiving treatment for substance abuse. This argument lacks any evidentiary support in the record, and is instead based on mere generalizations. The Court, therefore, rejects this argument for the same reason it was rejected in connection with the 24/7 live-in site manager requirement.

*responsive*" (emphasis added) (quoting *LeBlanc Sternberg*, 67 F.3d at 425)); *see also United States v. Yonkers Bd. of Educ.*, 837 F.2d 1181, 1223-24 (2d Cir. 1987), *cert. denied*, 486 U.S. 1055 (1988). As counsel for defendant conceded at oral argument, at least some of the citizen petitions could have been motivated by discriminatory intent. Thus, the public support for S.C.C. § 450 is insufficient by itself to justify the law under the FHA.

The Court concludes that defendant has failed to produce sufficient evidence to support its proffered interests in preventing excessive littering and promoting public safety. Defendant's counsel conceded at oral argument that the legislature did not rely on any official study documenting behavioral problems associated with substance abuse houses and that the basis for this provision was solely the inference that individuals receiving treatment for alcoholism or substance abuse presented safety problems. Defendant relies on anecdotal testimony presented to the County Legislature by various citizens. For instance, a Brookhaven resident testified generally about sober homes, stating: "The outside of the homes are not kept up. There is a lot of garbage and debris." (County Legislature Minutes at 170-71.) With respect to public safety issues, the same Brookhaven citizen testified in a non-specific manner regarding an alleged stabbing and a substance abuse house resident who allegedly threatened to jump off of a highway overpass. (*Id.* at 170.) Another citizen provided general testimony that businesses around a particular affiliated sober home were impacted by shoplifting, harassment, drug use, and public sexual acts. (*Id.* at 169.) A civic association officer testified that sober home residents engaged in

public urination and used obscene language. (*Id.* at 150.) However, these and any other such anecdotes, which the Court accepts as true for purposes of this motion, do not justify imposing a blanket, facially discriminatory restriction on all existing and proposed substance abuse homes in Suffolk County. *See Oconomowoc*, 300 F.3d at 786 (rejecting, under the FHA, anecdotal testimony of neighbors of proposed facility as insufficient to establish safety threat to community in considering whether to grant accommodation to zoning ordinance).[28]

The Court also rejects defendant's proffered justification that the law prevents overcrowding. As a threshold matter, the evidence in support of this justification is as sparse and anecdotal as the evidence offered in connection with the other justifications rejected *supra*. For instance, on the issue of overcrowding, the same Brookhaven citizen mentioned above testified generally that some sober houses seek up to 15 to 20 residents. (County Legislature Minutes at 170-71.) This anecdotal testimony is insufficient to establish defendant's proffered interest in preventing overcrowding. Furthermore, defendant "never justifies his apparent view that other people can live under such 'crowded' conditions when [individuals overcoming substance abuse] cannot." *Cleburne*, 473 U.S. at 450 (holding, under rational basis test, that application of facially discriminatory zoning ordinance which required special use permit for group home for the mentally disabled was invalid under the Equal Protection Clause).

Defendant has also failed to show that the six-person limitation in S.C.C. § 450 is narrowly tailored to further any of the above-discussed interests.[29] The law makes no

---

[28] In support of its argument that the provision at issue does not violate the FHA, defendant cites to *Oxford House-C v. City of St. Louis*, 77 F.3d 249 (8th Cir. 1996), in which the Eighth Circuit upheld an eight-person limitation as applied to an Oxford House sober home where the government's justification for the law was that it would decrease congestion, traffic, and noise in residential areas. *Oxford House-C*, however, is inapposite because, as discussed above, the Eighth Circuit applies a rational basis test, *see id.* at 252 ("We conclude that the City's eight person restriction has a rational basis and thus is valid under the Fair Housing Act."), whereas this Court agrees with the majority of courts and applies heightened scrutiny. Furthermore, in *Oxford House-C*, the Eighth Circuit specifically noted that the limitation at issue was in fact more generous than the generally applicable zoning law that applied to the non-disabled. *See id.* at 251-52 ("Rather than discriminating against Oxford House residents, the City's zoning code favors them on its face. The zoning code allows only three unrelated, non[-]handicapped people to reside together in a single family zone, but allows group homes to have up to eight handicapped residents."). In the instant case, S.C.C. § 450 imposes a more significant burden on the disabled than the public at large, which is under no restriction regarding the maximum number of unrelated individuals that may reside together.

[29] Defendant's proffered overcrowding justification, for instance, is undermined by the fact that the law has no requirement regarding the size of substance abuse houses. For example, eight disabled persons might live comfortably in a large home in violation of S.C.C. § 450, while six disabled persons might live in a small and overcrowded house that complies with S.C.C. § 450. This anomaly indicates that the six-person limitation is not narrowly tailored to further any interest in preventing overcrowding. *See, e.g., City of Chicago Heights*, 161 F. Supp. 2d at 845 ("[Defendant] points to no evidence of the specific needs of disabled individuals to support such a draconian facially discriminatory maximum density

distinction based on the particular characteristics of individual residents in substance abuse houses. Thus, defendant has failed to show that the law is the least discriminatory means of effectuating defendant's proffered interests.

In sum, in response to plaintiffs' summary judgment motions, defendant has failed to offer any evidence, other than anecdotes and unsupported generalizations, that individuals who are undergoing treatment for substance abuse and who wish to live in a group home setting to aid their recovery pose any greater public safety risk or potential for generating excess debris or overcrowding than any other group of non-disabled individuals who wish to live together. Thus, Suffolk County has not shown that "its actions furthered, in theory and in practice, a legitimate, bona fide governmental interest and that no alternative would serve that interest with less discriminatory effect." *See Tsombanidis*, 352 F.3d at 575. Accordingly, the Court concludes that the six-person limitation is facially invalid under, and therefore preempted by, the FHA.

### iv. Licensing Requirements

Finally, plaintiffs challenge the validity of the provisions of S.C.C. § 450 that establish certain licensing requirements for substance abuse houses. As with the rest of S.C.C. § 450, the licensing requirement subjects individuals recovering from substance abuse to disparate treatment under the law, as the restriction is not applied to

---

requirement.").

any other persons in Suffolk County.[30] Therefore, heightened scrutiny applies and Suffolk County must provide adequate justification. Suffolk County argues that the registration and inspection requirement is "necessary in order to ensure that the other requirements of the local law are obeyed and to avoid overcrowding in these premises." (Def.'s Br. at 14.) To the extent that defendant argues that the registration requirements are necessary to enforce compliance with the other challenged elements of the law, the Court rejects that argument for the reasons discussed *supra*. Suffolk County has not directly offered any other justification for the law, either in its brief or at oral argument.

Reviewing defendant's submissions liberally, however, defendant provides some other evidence that could potentially address the registration and inspection requirements: (1) the testimony of an officer of a citizens' group which classified many operators of substance abuse homes as "slum landlords" (County Legislature Minutes at 149); and (2) the testimony of the same Brookhaven citizen mentioned previously that many owners of substance abuse homes were merely "out to make a quick buck."[31] (*Id.* at 170-71.) Assuming that such testimony is true for the

---

[30] Plaintiffs concede that all Suffolk County residences can be inspected by local municipalities for safety violations. (Oxford House Pl.'s Br. at 5 n.1.) This Court's analysis, therefore, applies only to the inspection requirements that are not generally applicable to all persons in Suffolk County.

[31] J. Paul Molloy, CEO of Oxford House, also testified that he believed that regulation was appropriate for substance abuse houses run by "entrepreneurs," but not for the type of self-supporting living arrangement at Oxford House residences. (*See* Molloy Dep. at 122-23.)

purposes of this motion, defendant has failed to show that the licensing requirements at issue are narrowly tailored to support any asserted government interest. Because defendant has not proffered any evidence to indicate that the affected class of disabled people are so particularly vulnerable as a class to predatory or unscrupulous landlords (as opposed to individuals with other disabilities, individuals on public assistance, or the public generally) in a manner that necessitates the application of the registration, background checks, and inspection requirements to all substance abuse houses, the law is not warranted by the unique and specific needs and abilities of those disabled persons nor narrowly tailored in any manner. *See, e.g.*, *City of Chicago Heights*, 161 F. Supp. 2d at 845 (rejecting local law requiring inspections for housing for people with disabilities, while not requiring such inspections for other use, because it was not narrowly tailored to the needs of the disabled involved, and there was "no evidence that disabled persons are more likely to move into unsafe dwellings, and thus is not tailored to the needs of disabled persons"); *see also Cmty. Hous. Trust v. Dep't of Consumer and Regulatory Affairs*, 257 F. Supp. 2d 208, 229 (D.D.C. 2003) (rejecting registration requirement where "proffered rationale, quite simply, does not explain why the District needs more information from those in need of treatment, rehabilitation, assistance, or supervision, than it does from others." (citation and internal quotation marks omitted)).

Accordingly, the Court concludes that the licensing requirements of S.C.C. § 450 are facially invalid under, and therefore preempted by, the FHA.

\*\*\*

In sum, S.C.C. § 450 facially discriminates against the disabled. Applying heightened scrutiny under the FHA and construing the evidence most favorably to defendant under the summary judgment standard, the Court concludes that defendant has failed to proffer sufficient evidence to justify any legitimate governmental interests furthered by S.C.C. § 450 and that defendant also has failed to proffer sufficient evidence to show that the law is the least discriminatory means of furthering those interests. Therefore, plaintiffs are entitled to summary judgment on their claim that the challenged provisions of S.C.C. § 450 violate, and are preempted by, the FHA. Accordingly, the Court permanently enjoins defendant from enforcing the challenged provisions of S.C.C. § 450.[32]

C. Additional Relief Requested by the Reynolds Plaintiffs[33]

---

[32] The Court will address the precise language of the injunction at a conference with the parties.

[33] Defendant argues that the Reynolds plaintiffs may not seek any additional relief on the instant motion for summary judgment because it is beyond the scope of their submissions in connection with this Court's pre-motion conference requirement. (*See* Def.'s Br. at 28.) However, in their January 13, 2009 letter requesting a pre-motion conference, the Reynolds plaintiffs did refer to their claims that defendant had engaged in a pattern of discrimination in violation of the *Weigel* Settlement. Both parties briefed this issue and, in any event, as discussed *infra*, the Court denies this portion of the Reynolds plaintiffs' summary judgment motion.

The Reynolds plaintiffs also ask the Court to "declare that Suffolk County, SCDSS, and SCDOH have engaged in a pattern of discriminatory conduct against persons recovering from alcoholism and/or substance abuse and residing in sober houses, including persons referred to Suffolk County sober homes from treatment facilities and institutions outside Suffolk County and enjoin such conduct."[34] (Reynolds Pls.' Reply Br. at 18-19.)

To the extent plaintiffs seek, on this motion for summary judgment, a declaratory judgment that Suffolk County has a history of violating the law, that request is denied. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration." As the Supreme Court has held, whether to grant a declaratory judgment is in the court's discretion:

> We have repeatedly characterized the Declaratory Judgment Act as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." . . . When all is said and done, we have

concluded, "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power."

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citations omitted). In this case, the Court concludes, in its discretion, that the requested declaratory relief is unnecessary and moot in light of this Court's injunction against enforcement of the challenged provisions of S.C.C. § 450. *See, e.g.*, *Ippolito v. Meisel*, 958 F. Supp. 155, 165 (E.D.N.Y. 1997) ("[C]ourts are not obliged to entertain actions for declaratory judgment not seeking prospective relief but merely declaring past wrongs.").

To the extent plaintiffs ask the Court to permanently enjoin Suffolk County from unlawfully discriminating, such request is denied as well. "Generally, to obtain a permanent injunction, a party must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1362 (2d Cir. 1989) (citing *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 57 (1975)). Plaintiffs have failed to show that they will suffer irreparable harm without the requested relief. As discussed above, the Court grants plaintiffs' motion for summary judgment enjoining enforcement of the challenged provisions of S.C.C. § 450. Therefore, any further injunction is unnecessary because "the Court allows the defendant a good faith presumption of compliance with the spirit and letter" of the Court's ruling in the instant case. *See Ladd v. Thomas*, 14 F. Supp. 2d 222, 224-25 (D.

---

[34] Although the Reynolds plaintiffs referred in their initial brief to a stipulation of settlement in a previous action, plaintiffs clarify in their reply brief that they do not "seek summary judgment on a claim that Defendant Suffolk County Department of Social Services (SCDSS) is in violation of the *Weigel v. Wing* CV 98-4870 (E.D.N.Y.) Stipulation of Settlement." (Reynolds Pls.' Reply Br. at 3.) Instead, the Reynolds plaintiffs offer that case merely as an example of defendant's alleged "systemic efforts to remove sober homes as a housing option for persons recovering from substance abuse disabilities in the County." (*Id.*)

Conn. 1998) (denying permanent injunction where court had already entered declaratory judgment); *see also Robert Stigwood Group Ltd. v. Hurwitz*, 462 F.2d 910, 913 (2d Cir. 1972) (holding that issue of permanent injunction was moot where defendant had voluntarily ceased the complained of conduct, and "[m]oreover, our recent decision [in another case] undoubtedly has chilled any extant enthusiasm for future performances of the sort involved here"). Therefore, the Court denies the Reynolds plaintiffs' motion for summary judgment insofar as it requests declaratory and injunctive relief beyond the Court's injunction regarding S.C.C. § 450.[35]

### V. Conclusion

For the reasons set forth above, the Court concludes that the challenged provisions of S.C.C. § 450 are facially invalid under, and therefore preempted by, the Fair Housing Act. Accordingly, the Court enjoins defendant from enforcing the challenged provisions. Therefore, plaintiff Oxford House's motion for summary judgment is granted in its entirety (03-cv-3777).[36] The Reynolds plaintiffs' motion for

summary judgment is granted in part and denied in part. To the extent the Reynolds plaintiffs seek an injunction against the enforcement of the challenged provisions of S.C.C. § 450, their motion for summary judgment is granted. To the extent the Reynolds plaintiffs seek additional declaratory or injunctive relief, their motion for summary judgment is denied, and the parties to that action (05-cv-483) are ordered to participate in a conference to address those claims.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 17, 2010
Central Islip, New York

* * *

Plaintiff Oxford House, Inc. (No. 03-cv-3777) is represented by Robert L. Schonfeld, Moritt Hock Hamroff & Horowitz LLP, 400 Garden City Plaza, Garden City, New York 11530. Plaintiff HRRMG (No. 03-cv-3777) is represented by John Claude Bahrenburg, c/o Windwood Meadow, Inc., 3390 Route 112, P.O. Box 786, Medford, New York 11763. The Reynolds plaintiffs (No. 05-cv-0483) are represented by Robert Briglio, Esq., Nassau/Suffolk Law Services Committee, Inc., 1757 Veterans Highway, Suite 50, Islandia, New York 11749 and by Martin J. Coleman, Law Offices of Martin J.

---

[35] Although, as discussed above, the Court considers the requested relief to be moot on this record, defendant has not moved to dismiss these claims. Therefore, the Court will hold a conference with the parties to address those remaining claims.

[36] Plaintiff HRRMG (No. 03-cv-3777) did not join in Oxford House's motion for summary judgment. At the January 21, 2009 pre-motion conference, the parties indicated that an agreement had been reached whereby HRRMG would withdraw from the action and that HRRMG would submit a stipulation to that effect. A review of the docket sheet indicates that no such stipulation has been

filed. Accordingly, it is hereby ordered that HRRMG submit a letter to the Court by February 26, 2010, advising the Court as to its status as a party in this action.

Coleman, 100 Crossways Park Drive West, Suite 412, Woodbury, New York 11797. Defendant in both actions is represented by Patrick M. Murphy, McCabe, Collins, McGeough & Fowler LLP, P.O. Box 9000, 346 Westbury Ave., Carle Place, New York 11514.